v. United States of America Administrator Steve Penance for each defendant. 20 minutes for the plaintiff. Good morning your honors. Initially I'd like to reserve two minutes Okay. Obviously I represent Paul Stewart. We presented three issues, well some of them had sub-issues, but the essential basic fact patterns for each is a conflict of interest regarding Mr. Stewart's attorneys before and during his grand jury testimony and actually after too. Another issue, a constructive amendment or perhaps a variance in a confusing jury instruction and also a statute of limitations issue. I'll start, unless someone has questions I'll start my argument. The constructive amendment argument, the indictment named six people in terms of whose honest services were the object of the conspiracy. Those six people were Stewart, Beasley, Kilpatrick, Vandermeer, Moore, and Stanton. The evidence at trial permitted, if a jury instruction did not limit the object of the conspiracy to those six people, the evidence at trial allowed the jury to consider the honest services of other people. The jury instruction also allowed the jury to convict just on the basis of one person, one trustee, or one rep, and even when you took the prosecutor's argument into context, one transaction. The indictment alleged millions of dollars of investments and huge kickbacks, hundreds of thousands of dollars of bribes or kickbacks, but some of the evidence at trial involved trustees who only maybe took a few hundred bucks here or there at least with some of their transactions. And given the instruction that was given to the jury, the jury could have convicted on a conspiracy with the object this small, whereas the indictment was this big. And also it could have convicted, and that's even if the instruction had limited the jury's consideration to the honest services of the six named people. But the instruction also allowed persons, the jury to convict based on persons who were not. It's the constructive amendment argument you're making. Yes, yes. The constructive amendment, I contend it is a constructive amendment, although some of the case law in the Sixth Circuit and other circuits, it's kind of murky as far as what the difference is between constructive amendment and variance. But it's constructive amendment in this case based on the jury instructions, the evidence at trial, and adding to that was the prosecutor's argument that jury instructions were inconsistent with the indictment, is that the theory? Yes, that is the theory. And, you know, if you're preparing for a case this big, or with these many allegations, and they come back at the end of the case and they say, hey, you can convict on one transaction based on one person. I mean, some people were taking, you know, some people were benefiting by getting their bar tab paid at a bar called the Mosaic in Detroit. There were many, many trustees that benefited from that. There also were relatively smaller alleged bribes, maybe $1,000 or something. Whereas, you take people like Derrick Miller, and I hate to smudge my coat of Palin's name, Beasley, sometimes were asking for hundreds of thousands of dollars. So the constructive amendment, even if they believed that Beasley or Stewart did not agree that they take money and sell their vote, and Stewart did testify he never sold his vote, every investment he decided involved due diligence. The due diligence people said it was okay, except there was one that the prosecutor pointed out in her brief where the due diligence people questioned the fee that he agreed to, but they didn't question the wisdom of the investment itself. So they could have believed Stewart and said, the jury could have believed Stewart and said, okay, we don't think he did anything wrong, but he might have agreed, well, someone else can take a few hundred bucks and sell their vote. I mean, there were so many different transactions involved with the matter that you don't know what the jury did. And the jury instructions and the evidence allowed them to convict on some object of a conspiracy that wasn't... The basis of the law, is that correct? Yes. The district court wrote an opinion that rejected it? Yeah, the district court wrote an opinion rejecting part of it. I don't think they addressed the, there's one part they did not address, although I think these are matters of law that are reviewed de novo, but I don't think they got into... I understand that, I'm just trying to figure out how the district court responded to this argument. I don't think she... Lengthy response, I'm wondering what that was. I don't think in her opinion, I'll get back to the lengthy response, I'm not sure what you're referring to, her opinion or... The opinion in order to denying the Rule 29 motion for acquittal, it didn't address this issue or it did? She addressed part of it, but she never got into... Which part did she address and which part did she not address? She never got into, I don't believe, it's been a little bit since I've looked at that opinion, but I don't believe she looked at the part where we're claiming they could have convicted on the honest services of some person. Or persons, other than those six people. Like a conspiracy, for instance, to the honest services of Tlaib, for instance, in a transaction with a guy named Sarafa, where she specifically asked for $3,000 to sell her vote. Well, the nature of a conspiracy, as you're talking about, one overall scheme, one overall conspiracy. And the nature of conspiracy is that assorted people, some of whom may be mentioned in the indictment, and some of whom are not, wander in and out. I mean, if it's a big conspiracy, that happens all the time. What's so strange about this case that somehow that would amount to a constructive amendment and not just be your typical standard conspiracy case? There are people who can walk in and out of the agreement itself. But what they agree to do, the conspiracy specified the honest services of six people. Other people, other than those six, could have agreed to sell. Hey, we're going to try to set up for Stuart Beasley, Kilpatrick, Van der Meer, Moore, and Stanton, and sell their votes. And that's what the indictment said. I mean, I didn't draft it, the government did. They drafted it, gave it to the grand jury, and that's what they got. They didn't say that honest services to lobby was part of the agreement, even though to lobby could have agreed that these other people. The person who's not within those six people? Yes. I'm sorry. No, go ahead. And that expansion occurred in testimony or in the instructions? The testimony and the instructions. The instructions allow the conviction. As to the testimony, there is this opinion by the court below. We're not bound by it at all, but it goes on at length and says, you know, it's not uncommon for facts that are tangentially related to the guilt to come in during the course of trial. That's true, but if the instruction would have limited, even though. . . So then we go to the instruction. Yes, the instruction said, hey, jury, you can convict on any of this. The instructions. . . Any of the honest services. Right, but several times the instructions do refer to those six people. There are some other parts in the instructions. I don't have them right in front of me. When they talk about the scheme. . . Talk a little bit more generally. Is that right? Well, the instructions. . . Can I keep going? You can answer his question briefly. The instructions, when they speak about the six people, talk about the substantive offense. They instructed in relation to a plan or course of conduct on those six people related to the substantive offense. A plan can involve one person and not an agreement at all. There's an objection in the lower court on that. I see. Yeah, the conspiracy. . . I have a question that requires a yes or no answer and no more, okay? Okay. Does Section 31349 require an overt act, proof of an overt act? You know, we looked. . . Yes or no? I don't believe so. Okay, thank you. All right, you'll have your rebuttal time. Good morning, Your Honorable Court. I would also like to reserve two minutes of time. Martin Burris on behalf of Mr. Beasley. With regard to count two, Mr. Beasley challenges the conviction based on the indictment, the fact that it was defective duplicitous, the jury instructions did not cure that error. There was a motion for bill of particulars filed in the district court. The district judge basically promised that there would be a special verdict and jury instructions would take care of the matter. Those were never done. The court has an opportunity to look at this on a plain error basis because trial counsel did not object to the instructions below. As far as the actual birthday party that was the subject of this particular count, Mr. Beasley, rather the government brought in five people who were at the birthday party for Mr. Beasley. It was unbeknownst to him, Mr. Zajac, a co-defendant who has since died, set up the birthday party at a hotel room, the Athenaeum Hotel in Detroit. Mr. Beasley was walked over by someone and came into a room and there were 50 to 60 people there, some of whom he recognized. He was not a native Detroiter but came from Chicago to be the treasurer of the city of Detroit. So apparently Mr. Zajac had contacted people not only who did some business with the various pension boards but also who knew Mr. Beasley as treasurer of the city of Detroit. Some of those individuals, it was suggested they bring some money in cash to favor Mr. Beasley with a birthday present. Only three of the people who testified at trial actually recall being there and giving cash contributions. That was Mayfield, Turner, and Zadrowski, and two of those were attorneys who actually were independent contractors for the board. A couple of people who testified did not contribute anything to the birthday party. Mr. Beasley had no way of knowing who contributed anything to the birthday party. He didn't ask about it. He was given an envelope with $9,000 in cash and a birthday card which was unsigned. Obviously, from the point of view of the individuals who testified, none of them indicated that they gave the birthday gift with the thought of receiving a voter any favor from Mr. Beasley in regard to his official position as either treasurer of the city of Detroit or of the pension boards. And from Mr. Beasley's perspective, he did not know who gave him cash. He didn't have any idea who contributed to the birthday party and therefore could not possibly have made an agreement to favor any of those individuals with selling his office or selling his vote. We submit that there was insufficient evidence on that particular account. The jury instructions were not specific. The victims of the extortion were never named. It was never presented to the jury that the people who testified were actually the victims. It only said that the indictment said that they were persons doing business with the retirement systems, which would suggest the people who testified who gave birthday gifts, who denied that it was for any kind of a favor, were the victims of the extortion. Was their intent, is what they believed, controlling? I'm sorry, Your Honor? How does what they believed figure into the elements of the offense? Well, there has to be the quid pro quo. What are the elements of the offense? Well, the elements of the offense are, as are indicated, the extortion of individuals, you know, by the official. That involves Mr. Beasley's conduct. That's correct. And Mr. Beasley had no idea this party was even planned. He had nothing to do, no knowledge of the party until he got there. He was, in testifying, he was flattered and surprised when he went to the Athenaeum and they said, oh, gee, they're throwing a birthday party for me. So it couldn't have been any effort or knowing. He didn't try to give the money back, did he? No, he didn't. He didn't even know who gave it to him. No, he didn't. But, I mean. He could still give it back, didn't you? Well, he could have given it back to Zajac, the guy who actually handed it over to him. See, they weren't, it wasn't handed out individually. If you, speaking hypothetically, not your case, but speaking hypothetically just to see what the law is, if you just are a nice guy and never did anything dishonest and somebody comes up and says, surprise, surprise, here's a bribe, that's, you're guilty when you take it, aren't you? I mean. How about surprise, surprise, it's a gift? Huh? It's a gift, it's a birthday. It's a gift, but if it's a gift from a group of people who do business with you and it's outside the norm of social gifts. Your Honor, I don't think it is. My example was bribe. Your theory would have said even that bribe didn't count because he didn't know about it ahead of time. No, you're right. Right? Because the people who paid the money were paying for specific influence as opposed to general influence. Well, you know, I think this is a very, it's on the cutting edge of what the McDonnell case, which was decided after I filed my principal brief, the McDonnell case, it's cited in my reply brief, and it says that the scope of these statutes has to be limited by instructions. Otherwise, innocent conduct, such as throwing a birthday party, might count. I'm sorry, but, you know, your average honest public official who went into a birthday party of this type innocently would be horrified at receiving $9,000 and would seek by every means possible to have it returned and to make absolutely clear that that public official was not taking money from people who had business before him in any capacity. That's not, I mean, you can overplay the poor innocent. I mean, he's a treasurer. He's a sophisticated man. I mean, there's a lot there for the jury to infer intent regardless. We don't even know who the people at the party were. Some of them he identified as doing business with the boards. There were 50 to 60 people there. We don't know that there are just other individuals who contributed to the birthday party, contributed gifts to them. At any event, the court asked, Mr. Busey asked that the court reverse on that basis. Account four was also an extortion account which involved his lifelong friend, Mark Andre Cunningham. This one was Mr. Cunningham and Mr. Beasley had a relationship going back to their early days at high school in which they exchanged money between each other. At one point in time, Beasley gave Cunningham a car in college when he was down on his times. They did these things on a regular basis. It wasn't unusual for Beasley to contribute money to Cunningham and likewise Cunningham to do the same for Beasley. Cunningham acted as an agent for his uncle before one of the pension boards and obtained a contract for the CINCOM deal that went before the board. No reasonable juror could believe kind of argument you're making right now. I'm sorry, Your Honor? Is this an argument where in order to accept it we'd have to say no reasonable juror could believe that there was a quid pro quo here? Yes. Other than a gift. That's basically what it is. That's essentially what the argument is. In any event, the only testimony that the government was able to elicit from Cunningham was the fact that he gave these based on the fact that Beasley was his friend and secondly on the basis that it might have been in the back of his mind that he helped him with the CINCOM project, but on cross-examination denied that it was a payment for anything that was done. If we're convinced by your argument, that's not enough. We've got to say no reasonable person would not be convinced by your argument. Is that right? On Count 7, the acceptance of a bribe. I see my time is up. I would ask the Court to look at the arguments set forth in my brief and also the joinder of the arguments that I had with Mr. Stewart's brief. Thank you. All right. Ms. Gorgon? Have I got that right? Gorgon, yeah. Gorgon, yeah. Good morning and may it please the Court. I'm Stephanie Gorgon for the United States. I'd like to start where we left off with the elements of a Hobsack extortion. The Court has it exactly right. There just needs to be a thing of value that is given in the expectation that some official action is going to come from giving that thing of value. So Mr. Beasley was guilty when he took the bribe and there was plenty of evidence that this money from these four witnesses who testified that this money was given in the expectation of official action from Mr. Beasley. Similarly, with his good friend, Mr. Cunningham, there's no doubt that he did talk out of both sides of his mouth at times during his testimony. But here, the 12 jurors that this Court gives deference to on credibility determinations credited his testimony that he was extorted even by his good friend and there is plenty of evidence to support that count as well. I'd like to turn to the constructive amendment argument, which is a little hard to follow, and I think that's because Judge Rogers was kind of asking, well, what was really decided by the District Court? And if I could turn the Court's attention to a specific page in the record, which is 7479, there you'll see from her order that the District Court is addressing the argument that the indictment required an agreement as to all six of the trustees listed in the indictment. And she very easily dismissed that argument as kind of a basic misunderstanding in the trial court about the commonplace practice of charging in the conjunctive and proving in the disjunctive. So that's what was really presented to the District Court. That's what she ruled on. But in any event, if we look at the new kind of constructive amendment argument that's been raised, it would still fail under any standard of review because here Mr. Stewart would have to show both a problem with the jury instructions and with the proofs. And I said that if you look at the jury instructions, you're not going to find a problem with them in terms of the District Court repeatedly advising the jury that the conspiracy count is about a conspiracy to deprive the pensioners of the honest services of the six trustees that were listed in the indictment. So the jury instructions very faithfully track the indictment here. And the government's brief cites the pages. They're 6724 and 6731. That's where you'll see the list of six coming up over and over again as the District Court instructs the jury. There are some points within those instructions where they're just sort of referred to as a group. I think that's right. I think there's one point where right after, and I think this is kind of laid out in our brief, right after doing a list of six, she doesn't repeat all six names again. She says one of these trustees or one of the trustees. And sure, if you take that in isolation, that could look like maybe a constructive amendment, but you certainly couldn't find that if you take it in context. One thing that isn't maybe very clear from the briefs, and maybe because it wasn't very clear that that was one of the arguments that's kind of being made here, I heard my colleagues say that, look, there's a smaller amount of the conspiracy really proved here, and so ergo constructive amendment. And just to be very clear, even if it's not clear in the briefs, it is true that a narrowing of proofs cannot be a constructive amendment. In order to be a constructive amendment, you have to have a broadening of proofs from the jury instructions and the proofs. So I just wanted to be very clear about that, and there's a Supreme Court case on point called Miller, but I don't think that's clear in the briefing because it wasn't clear that that was an argument that was being raised. So if we move from the constructive amendment argument to the prejudicial variance argument where here he wouldn't have to show necessarily a jury instructional error, but he'd be relying on the proofs presented, he doesn't prevail there either because the proofs presented did not materially vary from the indictment. And he puts a lot of emphasis or weight on Trustee Talabi, that she came up during trial. She came up to answer Judge Rogers' question in George Best's testimony and George Stanton's testimony. But she came up because she was the one presiding over that pretty astonishing GM vote, which demonstrated Jeff Beasley's power, his corrupt power over the board, his ability to get her to change her vote from the second worst scenario to the absolutely worst case scenario. And so that's how she came up in their testimony. She also comes up because she has her Chief of Staff send a briber's to-do list email. But as my colleague acknowledges on pages 25 and 26 of his brief, that email implicates four of the six trustees listed in the indictment. George Stanton, Kwame Kilpatrick, himself, Stewart, and Beasley. So this is how she's coming up. She's not coming up as a basis to convict. She's not used that way in closing. And so here he can't even show the material variance he would need to show. Even if he could have shown a variance, he certainly can't show prejudice. And here we're kind of back to where we started on the constructive amendment argument that was offered to the district court, based on this misunderstanding of how the government can charge. Even now on appeal, if you look at his brief on 78 and 79, where he kind of tries to make a prejudice argument. He says that he was prejudiced because he wasn't able to use his planned defense, which was rendered useless, because he wasn't able to say that he had a limited involvement in the conspiracy because the government was allowed to prove maybe only one of the six trustees was depriving the pensioners of their honest services. So here there's a bunch of misunderstandings. First, the ability to charge in the conjunctive and prove in the disjunctive, but also what Judge Gibbons has pointed out, which is that a conspirator doesn't have to know every single aspect of the conspiracy. So when he says in his brief, well, I was going to say that I had no involvement with the vast majority of the transactions on page 78, that's really a concession to being involved in the conspiracy and just saying, well, I wasn't involved in every single part of it. I don't know if there are any other questions on that issue. I'd like to maybe touch on the closing argument issue, if the court would allow that. This is a claim that's reviewed for abuse of discretion. Here the district court denied a motion for a new trial in Record No. 478. I really want to address something that came up in the reply, where the prosecutor's use of the $97 million loss amount was characterized as dishonest. And I want to address that because it wasn't. It was proven. And the government's brief points this out on page 67, where pointing to parts of the records that shows at least $118 million of loss shown. And if we actually even look at Jeff Beasley's trial testimony, he acknowledges and admits that there's at least over $90 million of loss. So this is not a dishonest claim or statement made in closing. I think what we really disagree about is what it means. Like, what did it mean that there was this kind of loss? And it was a permissible argument that the prosecutor made that by going against their own advisors over and over again for loser deals, that that was evidence that these votes were loser deals. Loser deals. Deals where we'll lose is what you mean. Right. Right. That's what I mean. Deals that were not in the best. Bad deals. Yeah. Right. But that's precisely, Your Honor, that that is evidence that these are. Deals that losers would make. Well, deals that people who aren't giving honest services would make. That they're making these deals because I'm getting personally enriched by voting this way rather than I'm honestly representing the pensioners. And unless there are any other questions on this issue or any other issue in the briefs, thank you, Your Honors. We would rest on the briefs and ask you to affirm. Thank you. Hello again. There was mention of what we're now talking about. The idea that other names were put in the indictment and you can't have a conspiracy where that's, their honest services are part of the agreement. That's not a confusing argument. On page 67 of our opening brief on appeal, there is litany of sites where those cases say, hey, if you put somebody's name in there as the object of the conspiracy or likewise a substance or element that's not in that indictment and then you allow the charge to go to the jury adding other people. The case law on that, granted from other circuits, is very specific. They say, hey, you've constructively amended it if the evidence allowed that to happen. It depends on what kind of conspiracy you're dealing with to some degree because if you have a whole bunch of overt acts and you're required to prove an overt act under 371, the jury is going to be told that, you know, the government has to prove at least one of the overt acts. This is not an overt act case. So I don't know what your, I do not know what the statutes are in those cases you seem to rely on, but it would be extremely pertinent. Some of those are not conspiracy cases. For instance, there were bank cases where they, for an element of jurisdiction, they said it was a certain type of bank, but then they presented evidence to the jury it was a different type of bank. Well, what did they do in this case? Well, they named six people, the object, which their kind of services were the object of this conspiracy, no other persons. I'd like to quickly say also the substantial difference in the two conspiracies. We clearly presented that at pages 71 to 76 of our opening brief and they did not address it. You know, I put in my reply they weighed that argument. They also did not address the supervisory authority argument in terms of the conflicts of interest. They didn't address it at all, which involved. Leave your times up. Gotcha. I just want to make one brief point about the $97 million. That was in the context of our argument that the government attempted to on behalf of the jury to convict. And there were absolutely no proofs at trial that indicated any of the pensioners lost any money, any pension payments during the course of the trial. But yet the government took the position and argued to the jury that it was the clerks, the firefighters who lost their life in the course of their responsibilities that were being denied their pensions. And that was the entire theme and implication of the closing argument, appealing to the sympathy of the jurors to convict because the poor folks. Are you trying to tell me this contributed to the health of the pension funds? No, I'm not, Your Honor. But also there was no evidence that the individual pensioners, the one person they brought, the Rita Presbitero, lost any check or any money. There was no evidence whatsoever of that. What the pensioners actually got was actually determined, we know, by the process of the Detroit bankruptcy. So this is about what the fund lost, I think, not what the individual pensioners lost. That's my point, Your Honor. The government's argument was that the pensioners were the ones that were suffering directly and not the fund itself. That's all I have to say. Thank you. We appreciate the argument all of you have given, and we'll consider the case carefully. Mr. Burris, we see that you were appointed under the Criminal Justice Act to represent Mr. Beasley. And we're always grateful to folks who take appointments, but especially in these complex and difficult cases. And so we appreciate it very much and appreciate your fine efforts on behalf of Mr. Beasley. Thank you.